COMMONWEALTH of Pennsylvania,

v.

Jose CRUZ, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 16, 2006.

Filed March 5, 2007.

Michael E. Moyer, Allentown, for appellant.

James B. Martin, Asst. Dist. Atty., Allentown, for the Com., appellee.

BEFORE: STEVENS, KLEIN, and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Jose Cruz, appeals from the judgment of sentence imposed on January 9, 2006, by the Honorable Carol K. McGinley, Court of Common Pleas of Lehigh County. After careful review, we affirm.

¶ 2 Sometime in early 2001, Cruz entered into an agreement to purchase a vehicle from Gary Williams, the victim. Pursuant to their agreement, Cruz had possession of the vehicle while final details of the transaction were worked out. As time passed, the agreement still had not been finalized, so the vehicle remained in Cruz's possession but continued to be titled under Williams' name and insured under a policy in Williams' girlfriend's name. As a result, Williams requested that Cruz stop driving the vehicle. Cruz refused to comply with this request, and a series of heated confrontations ensued.

¶ 3 Eventually, Williams became enraged at Cruz, and in September 2001, Williams confronted Cruz about the vehicle. Cruz threatened Williams and shot Williams in the foot during this confrontation. Shortly thereafter, Williams again encountered Cruz, who was accompanied by Marcus Suarez. This encounter ended with Cruz once again threatening Williams.

¶ 4 On approximately February 1, 2002, Williams encountered Cruz outside a local restaurant. Cruz was accompanied by Suarez and Khadaffi Miller. Williams, noting the presence of Suarez and Khadaffi, suggested that he and Cruz settle their differences after Williams had a chance to gather some friends to act as backup. Cruz merely got into his vehicle and drove away.

¶ 5 Shortly thereafter, on February 2, 2002, Williams called his friend James Douglas and asked Douglas to drive from Reading to Allentown to act as "backup" in a fight Williams planned to have with Cruz. Douglas agreed and drove to Allentown. Williams and Douglas met at "Banana Joe's", a local nightclub. At Banana Joe's, Williams informed Douglas that he intended to fight Cruz.

¶ 6 As Williams and Douglas were leaving Banana Joe's, Williams saw Cruz driving in a white vehicle. Williams ran up to the vehicle, punched the window, and tried to open the door. Upon failing to open the door, Williams returned to his own vehicle with Douglas and proceeded to chase Cruz through Allentown. During this chase, Williams called Cruz on his cell phone, and the two agreed to meet at a 7–11 store to fight, on the condition that no weapons would be involved.

¶ 7 Williams and Douglas drove to the 7–11 store, where they met Cruz, Suarez and Miller. Cruz, Suarez, and Miller all appeared armed with firearms. Before

fighting, Cruz placed his .38 caliber handgun on the ground. Williams and Cruz proceeded to fight, and at some point, either Suarez or Khadaffi exclaimed "bang that p——!" As Douglas was pulling Williams off of Cruz, he noticed that Cruz had picked up his handgun.

¶ 8 Douglas and Williams ran in opposite directions around the 7–11 store, while Cruz shot at them. Douglas eventually found Williams at the front entrance to the store, whereupon Williams fell to the ground with a bullet hole in his back and one in his thigh. Shortly thereafter, Williams was taken to a local hospital, where he eventually died as a result of his wounds. Cruz was subsequently arrested and charged with homicide. On December 8, 2005, a jury convicted Cruz on one count of murder of the first degree.[1] Thereafter, on January 9, 2006, the trial court sentenced Cruz to life imprisonment without the possibility of parole. Cruz filed post-sentence motions, which the trial court denied on June 16, 2006. This timely appeal followed.

■ ¶ 9 In his first issue on appeal, Cruz argues that the evidence presented at trial was insufficient to sustain his conviction. We note that in evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *See Commonwealth v. Wallace*, 817 A.2d 485, 490 (Pa.Super.2002), *appeal denied*, 574 Pa. 774, 833 A.2d 143 (2003), *cert. denied*, 541 U.S. 907, 124 S.Ct. 1610, 158 L.Ed.2d 251 (2004).

■ ¶ 10 We may not weigh the evidence and substitute our judgment for the fact-finder. *See Commonwealth v. Derr*, 841 A.2d 558, 560 (Pa.Super.2004). To sustain a conviction, however, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt. *See Commonwealth v. Hargrave*, 745 A.2d 20, 22 (Pa.Super.2000), *appeal denied*, 563 Pa. 683, 760 A.2d 851 (2000).

■ ¶ 11 A defendant is guilty of first degree murder when, with the specific intent to kill, he causes the death of another person. *See Commonwealth v. DeJesus*, 584 Pa. 29, 880 A.2d 608, 611 (2005). In the present case, Cruz contends that the Commonwealth failed to present sufficient evidence to support an inference that he acted with premeditation and a specific intent to kill. Cruz argues that the evidence of the mutual agreement to fight, combined with Williams's behavior in stalking Cruz, better supports a conviction of third degree murder. However, it is well established in Pennsylvania that a fact finder may infer malice and a specific intent to kill from the use of a deadly weapon upon a vital part of the victim's body. *Id.* Evidence that the defendant shot the victim in the back with a handgun is sufficient to permit an inference of malice and specific intent to kill. *Id.*, at 613. Accordingly, Cruz's first issue on appeal merits no relief.

■ ¶ 12 Next, Cruz contends that the verdict was against the weight of the evidence presented at trial. Our standard of review for a challenge to the weight of the evidence is well-settled: The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence

---

1. 18 Pa. Cons.Stat. Ann. §§ 2501–2502.

presented and determines the credibility of the witnesses. *See Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004).

¶ 13 As an appellate court, we cannot substitute our judgment for that of the finder of fact. *Id.* Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Passmore*, 857 A.2d 697, 708 (Pa.Super.2004), *appeal denied*, 582 Pa. 673, 868 A.2d 1199 (2005). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa.Super.2004) (citations omitted), *appeal granted on other grounds*, 582 Pa. 356, 871 A.2d 185 (2005).

¶ 14 Furthermore,
> where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Champney*, 574 Pa. at 444, 832 A.2d at 408 (citation omitted).

¶ 15 The learned trial court judge, the Honorable Carol McGinley, addressed Cruz's weight claim in the following manner:
> Essentially, the issue revolves around what weight the jury should have given

to the testimony of the defendant, and what weight the jury should have given to the testimony of James "Biddy" Douglas in their renditions of the moments immediately preceding the shooting. The defendant contends that he was acting in self defense to the imminent threat caused by Williams' statement "Biddy, do it." Douglas, on the other hand, testified that the shooting was the result of the defendant being encouraged by one of his friends to shoot Gary Williams, as evidenced through the statement, "bang that p———. F— him."

> Here, we can see no glaring error in the jury's decision to give more weight to the testimony of Douglas than it did for the defendant. Although both the defendant and Douglas were less than savory witnesses, the fact of the matter is that the jury could reasonably have determined that Douglas was more credible than the defendant.

> Moreover, as outlined above, the defendant's testimony that he was acting in self-defense in response to "Biddy, do it" could further be discredited because the defendant chose to shoot at the wrong person. If the defendant were acting in self defense to a situation where Douglas was going to shoot him, then clearly the defendant would have shot at Douglas and not the decedent, Gary Williams. Because we see no fault in the jury's credibility determinations of the witnesses we cannot say that the jury's decision was so outweighed by the evidence that it shocked the conscience.

Trial Court Opinion, 6/16/2006, at 12–13. We can find no abuse of discretion in the trial court's well reasoned opinion. Accordingly, Cruz's second issue on appeal merits no relief.

¶ 16 As we conclude that neither of Cruz's issues on appeal merit relief, we affirm the judgment of sentence.

¶ 17 Judgment of sentence affirmed. Jurisdiction relinquished.