J-S48012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARK ANTHONY MARTIN | |
| Appellant | No. 1326 WDA 2014 |

Appeal from the Judgment of Sentence January 29, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013843-2011

BEFORE:  PANELLA, J., DONOHUE, J., and WECHT, J.

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 26, 2015**

Appellant, Mark Anthony Martin, appeals from the judgment of sentence entered January 29, 2014, in the Court of Common Pleas of Allegheny County.  We affirm.

The trial court summarized the facts of this matter as follows.

On September 18, 2011, Sonya Smith was watching television inside the second floor bedroom of her residence at 9811 Glendale Road, in the Penn Hills section of Allegheny County.  Smith and Appellant had been involved in an intimate relationship since 2006, but became estranged in May 2011. Appellant was familiar with Smith's residence from visiting and staying there throughout their relationship.  Smith had locked all of the doors to her house before retiring to her bedroom that evening.  At approximately 3:45 A.M. Smith was awakened by voices outside of her bedroom window.  Smith called the police when she heard prying noises at the kitchen window, which was directly below her bedroom.  Appellant and John Sloan, who were unable to gain entry through the locked doors, broke through a [windowpane] in the kitchen door to gain entry to Smith's home through that door.

Shortly thereafter, Sloan, wearing black sweatpants, a black sweatshirt, gloves, a Halloween mask and a paintball mask, entered Smith's bedroom holding a 9mm firearm. Sloan ordered Smith to lie on her bed facedown and struck Smith in the head and arms multiple times with the firearm. Appellant, who was wearing a light colored t-shirt, grey sweatpants, and a ski mask entered Smith's bedroom[] shortly after Sloan. Appellant and Sloan straddled Smith and struck her multiple times in the arms and head; Sloan with the firearm and Appellant with a heavy object, most likely a crowbar.

Following the assault, the two men fled the residence. Appellant left first, exiting through the sliding glass door in the dining room, a door that because of its "stickiness" could only be opened by someone familiar with the premises. At the same time Penn Hills police officers arrived on scene in response to Smith's 911 call. Officer Ronald Como, with the assistance of his vehicle spotlight, observed Appellant jog across Glendale Road away from Smith's home. Officer Como exited his vehicle to approach Appellant, who immediately encountered dogs in a neighbor's yard. Officer Como's in-vehicle camera captured Appellant's image as he ran across Glendale Road away from Smith's home.

Officer Richard Pine approached from the opposite direction and observed Sloan exiting out the side kitchen door of Smith's residence and running towards the wooded area behind Smith's home. Sloan was able to escape the immediate area but was stopped by a Penn Hills officer responding to the scene approximately one-half mile away on Frankstown Road. Sloan was taken to the Penn Hills police station to be identified because he had no identification with him, and presented to the officer that he had been out jogging, "blowing off steam," after a domestic argument. He was later charged with the incident once Smith was able to be interviewed and identif[ied] him as one of the assailants.

At approximately 4:30 A.M. Jerome Landrum was awakened by Appellant knocking on his door. Landrum lived at 441 Hochberg Road, approximately one half mile from Smith's residence. Landrum had known Appellant for over ten years, but could not see Appellant's face when he looked outside so he called the police and gave a general description of the individual knocking on his door. Unable to gain entry to Landrum's home, Appellant went next door (442 Hochberg Road) and knocked on

the door of the home of Glenn Dillard, who was Landrum's uncle. Appellant knew and called out Dillard's name and Dillard admitted him into his residence. Police responded to the area based on Landrum's call and that his description of the person at his door matched that provided by Officer Como. The police did not encounter anyone on Hochberg Road at that time. Landrum entered Dillard's home and encountered Appellant, who told him that he had gotten into an altercation and needed a ride home. Appellant appeared scared and repeatedly looked out the windows of Dillard's home until police vacated the area. Landrum refused to provide a ride to Appellant, and after approximately fifteen minutes Appellant left Dillard's home.

Penn Hills officers responding to Smith's home entered the residence and encountered Smith, severely injured, in her bedroom. She notified officers that she immediately had recognized Appellant as the second assailant based on his build, height, weight, and distinctive smell. Smith was immediately transported to the hospital for her injuries; [she] sustained a total of nine broken bones in her arms, bruising on her arms and back, and a concussion. As a result of the attack Smith spent several days in the hospital and one month in a nursing facility for rehabilitation.

On September 23, 2011, en route from the rehabilitation facility to attend a funeral, Smith returned home briefly and discovered a book[ ]bag belonging to [Appellant] in the dining room near the sliding glass door that Appellant had exited. She also found a ski mask on a table near the book[ ]bag. Smith contacted the police, who collected the ski mask and the book[ ]bag which contained, among other items, a crowbar. The ski mask was submitted to the crime lab, and a DNA mixture obtained from a tape lift and suspected saliva stain from the mask were compared to the DNA profiles of Appellant and Sloan. Appellant and Sloan could not be excluded as contributors to the sample taken from the tape lift, and Appellant could not be excluded as a contributor to the suspected saliva stain on the ski mask. Smith viewed the video from Officer Como's vehicle and identified Appellant based on his build, height, weight, and skin color. Kimberly Carson and Beatrice Berry, individuals who had lengthy relationships with Appellant were shown a still photograph from this video and also identified Appellant. Dillard and Landrum were interviewed at a later date and identified Martin as the individual who entered Dillard's residence in the early morning hours on September 18, 2011.

- 3 -

Trial Court Opinion, 1/5/15 at 6-10 (citations and footnote omitted).

Appellant was charged with robbery, burglary, aggravated assault, and criminal conspiracy.[1]  A first jury trial resulted in a mistrial when the jury was unable to reach a verdict.  The second resulted in the jury convicting Appellant of all charges, with the exception of robbery.  The trial court sentenced Appellant to an aggregate term of 17 to 34 years in prison.  The trial court denied Appellant's post sentence motions.  This timely appeal followed.

In his first issue, Appellant alleges the ineffective assistance of trial counsel.  Apart from two limited exceptions not pertinent here, claims of ineffective assistance of counsel cannot be raised on direct review.  **See Commonwealth v. Holmes**, 79 A.3d 562, 563 (Pa. 2013).  Accordingly, Appellant cannot raise this claim on direct review.  Therefore, we find Appellant's claim of ineffectiveness of trial counsel must await collateral review.

Appellant additionally argues that his convictions were against the weight of the evidence presented.  We note that

> [t]he finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

_____

[1] 18 Pa.C.S. §§ 3701(a)(1)(i), 2702(a)(1), 3502, and 903(c), respectively.

As an appellate court we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breach, temporarily and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience."

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Boyd***, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (quoting ***Commonwealth v. Cruz***, 919 A.2d 279, 281-82 (Pa. Super. 2007)) (citations omitted).

Appellant's argument on appeal fixes largely upon the credibility of the victim's identification testimony, as well as nature of the Commonwealth's evidence. In rejecting Appellant's weight of the evidence claim, the trial court observed that

[h]ere, the jury heard testimony from and assessed the credibility of several witnesses, as well as Appellant. Additionally, the jury viewed and considered video captured by Officer Como's vehicle, as well as hearing Smith's 911 call and Appellant's calls while incarcerated to Jade Marin, his daughter. Briefly stated, the evidence presented established that: (1) Appellant broke into Smith's home with John Sloan and assaulted Smith with a crowbar; (2) Smith identified [Appellant] as the second assailant to police immediately following the assault; (3) Smith consistently identified [Appellant] as the second assailant based on her familiarity with his height, weight, and distinctive odor, as well as his familiarity with her home from their five-year intimate

- 5 -

relationship; (4) Appellant fled as the police approached, leaving his ski mask, book[ ]bag, and crowbar near the sliding glass door through which he exited; (5) Appellant crossed paths with Officer Como on Glendale Road but was able to escape apprehension by running through the neighbor's yard; (6) Appellant hid inside Dillard's home until the police left the area; (7) Smith, Berry, and Cameron identified the individual in the video as Appellant; and (8) the ski mask contained a DNA mixture from which the Appellant could not be excluded as a contributor.

The jury clearly found the Commonwealth witnesses credible, and Appellant not so. Given the nature and quality of eyewitness and physical evidence in this matter, the [t]rial [c]ourt properly denied the motion for new trial as the verdict was not against the weight of the evidence.

Trial Court Opinion, 1/5/15 at 16-18 (citations omitted).

Upon review, we find no abuse of discretion by the trial court in determining that the verdicts were not against the weight of the evidence. Appellant's challenge amounts largely to a veiled attack on the credibility of the victim, Sonya Smith. Appellant assails the victim's ability to identify her attackers during the home invasion, attributes the victim's consistent identification testimony to "a desire to get back at a former lover," suggests that the evidence could have been tampered with, and insists that he was home sick on the evening the burglary occurred.

The defense presented all of these theories to the jury at trial, and the jury ultimately found them to be unavailing. The jury clearly acted well-within its discretion to credit the testimony of the Commonwealth's witnesses and not Appellant. *See Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa. Super. 2003) ("[T]he trier of fact while passing upon the

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.").

In light of the overwhelming evidence of Appellant's guilt, not least of all the victim's immediate and unwavering identification of Appellant as her assailant, we discern no abuse of the trial court's discretion in denying Appellant's challenge to the weight of the evidence.  Accordingly, his claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/26/2015