J-S70004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES BUCKLEY, | |
| Appellant | No. 3492 EDA 2014 |

Appeal from the Judgment of Sentence October 10, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0011223-2012

BEFORE: DONOHUE, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED DECEMBER 11, 2015**

Appellant, Charles Buckley, appeals from the judgment of sentence imposed October 10, 2014 following his jury conviction of murder of the first degree, aggravated assault, criminal attempt of murder, and carrying a firearm on a public street in Philadelphia in violation of the Uniform Firearms Act (VUFA).[1] On appeal he challenges the sufficiency and the weight of the evidence for his conviction. We affirm.

We take the underlying facts and procedural history from the trial court opinion of June 25, 2015. On May 17, 2012, Appellant shot and killed Tanisha Finch while attempting to kill Rahim Hartzog.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 2702(a), 901(a), and 6108, respectively.

Mr. Hartzog and Appellant had been acquaintances for over ten years, during which they sold drugs together. In January 2012, Mr. Hartzog stopped selling drugs because he became engaged to the victim. Ultimately, however, he lost his job and started selling drugs again. Although he was not selling drugs with Appellant, he sold drugs to many of the same customers.

Ms. Karen Monk, one of Mr. Hartzog and Appellant's customers, testified at trial that she contacted Appellant on the day of the shooting because she wanted to buy drugs on credit. Appellant told Ms. Monk to call Mr. Hartzog and tell him that she had $100.00 to buy drugs from him, although, as Ms. Monk testified at trial, she only had at most twenty dollars. Ms. Monk called Mr. Hartzog and arranged to meet him at the Getty gas station on Mt. Airy Avenue in Philadelphia.

Mr. Hartzog and the victim drove together and parked outside Ms. Monk's apartment complex across the street from the gas station. When Ms. Monk walked up to Mr. Hartzog's vehicle, she handed the victim a one dollar bill. After Mr. Hartzog told her that she had only given him one dollar instead of $100.00, Ms. Monk ran back towards her apartment.

Soon after Ms. Monk ran away, the victim told Mr. Hartzog that somebody suspicious was walking on the sidewalk approaching their vehicle. Mr. Hartzog testified at trial that he saw a person a few car lengths behind his vehicle who had a hood on and hands in the front pocket of his sweatshirt. As the person walked closer, Mr. Hartzog recognized it was

Appellant and started to drive away. As Mr. Hartzog drove away, Appellant started shooting at Mr. Hartzog's vehicle, hitting the victim in the head with one of his shots.

After dropping the victim off at the hospital, Mr. Hartzog spoke with the police, told them that he was there when the shooting occurred, and provided a description of the shooter. Initially, Mr. Hartzog did not identify Appellant as the shooter to the police because there is a "no snitch rule on the streets"; however, he eventually admitted to detectives that Appellant was the person who shot at him and the victim. (N.T. Trial, 7/22/14, 175; *see id.* at 178-79).

At trial, Ms. Chaquita Nabried testified that she heard gunshots in the early morning hours and then heard the rattle of the gate near her apartment. Ms. Nabried looked out of her apartment window and saw a man walk through the breezeway separating her apartment building from the other. She described the man to the police as a black male, five feet nine inches to six feet tall with dark skin, messy hair, maybe braids, and a dark shirt who was carrying a light-colored shirt over his shoulder and who then dropped the light-colored hooded sweatshirt as he walked by her bedroom window.

At trial, the Commonwealth introduced evidence that police recovered seven fired cartridge casings from the scene of the shooting. The Commonwealth also introduced evidence that police recovered an extra-large sweatshirt with gunshot residue from the breezeway between the two

buildings.  A DNA analysis of genetic material obtained from a hair on the sweatshirt indicated that the DNA mixture was 261.5 times more likely a mixture of DNA from Appellant and three random unrelated individuals than a mixture from four random unrelated individuals in the African-American population.

At trial, two alibi witnesses testified that Appellant was at home at the time of the shooting because he was on house arrest and had a 9:00 p.m. curfew.  However, on cross-examination, both stated that they did not have any specific recollection about the day that the shooting occurred.

Appellant testified in his own defense at trial.  During his testimony, he explained that on the night of shooting, Ms. Monk called him to buy drugs and he referred her to Mr. Hartzog because it was past his curfew so he could not leave his home to meet her.  He testified that his DNA got on the sweatshirt because while he was selling drugs to Ms. Monk's friend four days prior to the shooting, a man offered to sell him the sweatshirt and a bag of cosmetics, and when he checked to see the size of the sweatshirt his DNA got in the collar.

On July 28, 2014 a jury convicted Appellant of the aforementioned charges.  On October 10, 2014, Appellant was sentenced to a total sentence of life imprisonment without the possibility of parole for the first degree murder of Ms. Finch, plus an aggregate of no less than twelve-and-a-half nor more than twenty five years' imprisonment for the attempted murder of Mr. Hartzog and the VUFA conviction.  (*See* N.T. Sentencing, 10/10/14, at 16-

17).   Appellant filed post-sentence motions, including a challenge to the weight of the evidence, which the court denied on November 6, 2014 without a hearing.   Appellant timely appealed.[2]

Appellant raises two questions for our review:

I.   Is the [A]ppellant entitled to an arrest of judgment with regard to his convictions for first degree murder, attempted murder, aggravated assault and carrying a firearm in public since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving the [A]ppellant's guilt beyond a reasonable doubt?

II.   Is the [A]ppellant entitled to a new trial with regard to his convictions for first degree murder, attempted murder, aggravated assault and carrying a firearm in public since the verdicts of guilt are against the weight of the evidence?

(Appellant's Brief, at 4).

In his first issue, Appellant challenges the sufficiency of the evidence to support his conviction.  (*See id.* at 28-46).   Appellant argues that the Commonwealth failed to establish his identity as the shooter, that he had the specific intent to kill, that he acted with malice, that he took a substantial step to kill any victim, that he fired or possessed a weapon, or

---

[2] Appellant filed a timely Rule 1925(b) statement of errors on February 6, 2015.  *See* Pa.R.A.P. 1925(b).  On March 25, 2015, this Court granted trial counsel's motion to withdraw and on April 24, 2015, the trial court appointed counsel for the purpose of appeal.  On June 10, 2015, with leave of court, Appellant timely filed a supplemental statement of errors pursuant to Rule 1925(b).  *See id.*  The trial court filed a Rule 1925(a) opinion on June 25, 2015.  *See* Pa.R.A.P. 1925(a).

that he was responsible for the victim's death or any attempt to kill Hartzog. (**See id.** at 33-34). We disagree.

Our standard of review for a challenge to the sufficiency of evidence is well-settled:

> . . .[I]n evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.
>
> We may not weigh the evidence and substitute our judgment for the fact-finder. To sustain a conviction, however, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt.

**Commonwealth v. Cruz**, 919 A.2d 279, 281 (Pa. Super. 2007), *appeal denied*, 928 A.2d 1289 (Pa. 2007) (citations omitted).

"A defendant is guilty of first degree murder when, with the specific intent to kill, he causes the death of another person." **Cruz**, **supra** at 281 (citation omitted). Furthermore, "it is well established in Pennsylvania that a fact finder may infer malice and a specific intent to kill from the use of a deadly weapon upon a vital part of the victim's body." **Id.** (citation omitted). Additionally, "[p]ursuant to the doctrine of transferred intent, the intent to murder may be transferred where the person actually killed is not the intended victim." **Commonwealth v. Jones**, 912 A.2d 268, 279 (Pa. 2006) (citing 18 Pa.C.S.A. § 303(b)(1)).

Here, viewing the evidence in the light most favorable to the Commonwealth, the evidence sufficiently established that Appellant shot and killed the victim with the specific intent to do so. **See Cruz**, **supra** at 281. At trial, the Commonwealth offered the testimony of Mr. Hartzog, an eyewitness to the event. (**See** N.T. Trial, 7/22/14, 152-87). Mr. Hartzog testified that he and the victim went to the Getty gas station near Ms. Monk's apartment to sell drugs to her. (**See id.** at 155-57). While waiting for Ms. Monk to bring the correct amount of money to his car, Mr. Hartzog saw a person whom he identified as Appellant walk up behind the car and then start shooting at his vehicle as Mr. Hartzog drove away. (**See id.** at 160-67). Mr. Hartzog further testified that his fiancé, the victim, was shot in the head by Appellant and later died from her injuries. (**See id.** at 167-69, 179).

The Commonwealth also introduced testimony from Ms. Monk, who testified that at Appellant's request, she called Mr. Hartzog and told him that she had $100.00 and that she would meet him at the Getty gas station to purchase crack cocaine from him. (**See** N.T. Trial, 7/23/14, at 65-75). Ms. Monk further testified that after she heard the gunshots, she spoke to Appellant on the phone. He told her not to say anything, and that from now on, she should call him to get her crack, not Mr. Hartzog. (**See id.** at 95-96).

Finally, the Commonwealth introduced circumstantial evidence to establish that Appellant had a motive to shoot Mr. Hartzog. (**See** Trial Court

Opinion, 6/25/15, at 18). "Hartzog testified to his participation in selling drugs with [Appellant]; [Appellant's] negative reaction when Hartzog stopped selling drugs with him; and the tension that arose between Hartzog and [Appellant] when Hartzog started to sell again[.]" *Id.* Accordingly, viewing this evidence in the light most favorable to the Commonwealth, Appellant had the specific intent to murder Mr. Hartzog, an intent which transfers to his killing of the victim. *See Jones*, *supra* at 279.

Although Appellant argues that he was at home during the time of the murder, it is for the fact finder to make credibility determinations, and the fact finder may believe all, part, or none of Appellant's testimony. *See Commonwealth v. Sanchez*, 36 A.3d 24, 26-27 (Pa. 2011), *cert. denied*, 133 S. Ct. 122 (2012). Here, the jury was free to reject Appellant's testimony, and believe that of Mr. Hartzog and Ms. Monk. As such, we conclude that the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain Appellant's conviction for first degree murder. *See Cruz*, *supra* at 281.

Appellant also challenges his conviction of attempted murder. "A person may be convicted of attempted murder if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." *Commonwealth v. Dale*, 836 A.2d 150, 153 (Pa. Super. 2003) (citation and quotation marks omitted); *see* 18 Pa.C.S.A. § 901(a).

Here, viewing the evidence in the light most favorable to the Commonwealth, the evidence sufficiently established that Appellant took a

substantial step toward a killing, with the specific intent to do so when he fired seven bullets at the vehicle Mr. Hartzog was driving. ***See Dale***, ***supra*** at 153. Furthermore, as discussed above, Appellant had the specific intent to murder Mr. Hartzog. Therefore, we conclude that the evidence was sufficient to sustain Appellant's conviction for attempted murder. ***See id.***

Appellant also challenges his conviction of aggravated assault. Appellant's conviction for aggravated assault, being a lesser included offense, is supported by the same facts which support his conviction for attempted murder because the elements of aggravated assault are included in the offense of attempted murder. ***See id.*** at 154 (citing 18 Pa.C.S.A. §§ 2301 and 2702(a)(1)). Therefore, we conclude that the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain Appellant's conviction for aggravated assault. ***See Dale***, ***supra*** at 154.

Appellant also argues that the evidence was insufficient to sustain his conviction for carrying a firearm on a public street in Philadelphia under VUFA Section 6108. Section 6108 provides that "[n]o person shall carry a firearm . . . at any time upon the public streets . . . in a city of the first class unless: (1) such person is licensed to carry a firearm; or (2) such person is exempt from licensing under section 6106(b) of this title[.]" 18 Pa.C.S.A. § 6108. Furthermore, testimony of an eyewitness who observed a firearm in an appellant's hand is sufficient to prove a violation of Section 6108. ***See Commonwealth v. Monroe***, 422 A.2d 193, 195 (Pa. Super. 1980).

Here, the evidence at trial was sufficient to prove that Appellant carried a firearm on a public street in Philadelphia. Counsel stipulated that Appellant did not possess a license to carry a firearm and Mr. Hartzog testified that he saw Appellant shoot at his vehicle while walking down Mt. Airy Avenue, a public street in Philadelphia. (*See* N.T. Trial, 7/24/14, at 115; N.T. Trial, 7/22/14, at 158, 167). Therefore, we conclude that the evidence was sufficient to sustain Appellant's conviction for VUFA Section 6108. *See Monroe*, *supra* at 195. Appellant's first issue does not merit relief.

In his second issue, Appellant claims that all of the guilty verdicts were against the weight of the evidence. (*See* Appellant's Brief, at 47-55). We disagree.

> A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore,
>
> Where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Cruz*, *supra* at 282 (citations and quotation marks omitted).

Here, given the evidence introduced at trial, including the eye-witness testimony of Mr. Hartzog and the testimony of Ms. Monk, it cannot be said that the guilty verdict in this case shocks one's sense of justice. **See id.** Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's request for a new trial based on a weight of the evidence challenge. **See id.**

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2015