J-S16013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. : | |
| KEVIN ELIAS WILSON : | |
| Appellant : | No. 951 MDA 2017 |

Appeal from the Judgment of Sentence April 25, 2017
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0003170-2016

BEFORE:    BOWES, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 30, 2018**

Kevin Elias Wilson appeals from the aggregate judgment of sentence of nine months to twenty-three months incarceration following his convictions of simple assault, criminal conspiracy to commit simple assault, harassment, and criminal conspiracy to commit harassment.  We affirm.

On June 26, 2016, David King, the victim, was washing his car at his home on Enola Road in Carlisle when he heard a female scream emanating from Ponderosa Road, a private lane around the corner.  Mr. King decided to investigate, and while walking up the middle of Ponderosa Road, he encountered Appellant and his step-brother, Shawn Bowermaster, in front of Appellant's father's property located at 402 Ponderosa Road.  Appellant and Bowermaster approached Mr. King whereupon Bowermaster punched him in the face.  Appellant then told Mr. King that "he was going to get his ass kicked"

_____
* Retired Senior Judge assigned to the Superior Court.

if he did not leave the area. Before Mr. King could leave, Appellant pushed him, and both Appellant and Bowermaster began to punch Mr. King with closed fists. One of the men pushed Mr. King to the ground, whereupon both men kicked him numerous times in the face, head, shoulder, chest and back.

When the beating stopped, Mr. King stumbled home covered in blood. Mrs. King immediately called police, who arrived moments later. Mr. King informed the police that the attack occurred at 402 Ponderosa Road, and that he saw a vehicle driving away from the scene just after the confrontation. Mr. King also informed the officers that he left his hat at the scene of the altercation. Mr. King was taken to the hospital where he remained overnight due to the extensive injuries and lacerations he received, requiring, *inter alia* five staples to his scalp.

The police proceeded to 402 Ponderosa Road where they learned that Appellant and his wife had driven away moments after the incident to return to their residence in Harrisburg. Bowermaster eventually led the officers to Appellant's father's garage, where Mr. King's hat was hanging on the wall. Bowermaster gave police Appellant's phone number so they could reach him to speak about the incident. During a subsequent phone call, Appellant denied direct involvement in the altercation, and stated that only Bowermaster engaged in physical contact with Mr. King.

A jury trial was held in March 2017, after which Appellant was convicted of simple assault and criminal conspiracy to commit simple assault. The trial

court subsequently convicted Appellant of the summary offenses of harassment and criminal conspiracy to commit harassment. On April 25, 2017, the trial court sentenced Appellant to an aggregate term of nine months to twenty-three months incarceration. Appellant filed a timely post-sentence motion which the trial court denied. Appellant thereafter filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant raises the following issues for our review.

I.   Whether the evidence presented at trial was insufficient to support the jury's finding that Appellant did not act in self-defense of other persons under 18 Pa.C.S. § 506(a).

II.   Whether the evidence presented at trial was insufficient to support the jury's finding that Appellant did not act in self-defense of property under 18 Pa.C.S. § 507(a).

III.   Whether the evidence presented at trial was sufficient to convict Appellant on the charge of criminal conspiracy to commit simple assault.

IV.   Whether the jury's finding of guilt as it relates to the charges of simple assault and criminal conspiracy to commit simple assault was against the weight of the evidence presented at trial.

V.   Whether the trial court erred in instructing the jury on consciousness of guilt, flight, or concealment.

Appellant's brief at 5 (unnecessary capitalization omitted).

Appellant's first three claims challenge the sufficiency of the evidence supporting his convictions. Our standard of review of such claims is well-settled.

[W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Franklin*, 69 A.3d 719, 722 (Pa.Super. 2013) (citations and quotation marks omitted). Importantly, "the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence." *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).

With regard to Appellant's claim that he acted in defense of others, Pennsylvania law permits the use of force against another person in limited circumstances, such as defense of others. *See* 18 Pa.C.S. § 506. The defense of another relies substantially on the justification of self-defense, and is available only where the elements of the following statute have been met:

**Use of force justifiable for protection of the person**.--The use of force upon or toward another person is justifiable when the actor believes that such force is *immediately necessary* for the purpose of protecting himself against the use of unlawful force by such other person on the *present occasion*.

18 Pa.C.S. § 505 (emphasis added).

As for defense of others, the relevant statute provides as follows:

- 4 -

> **(a)** **General rule**.--The use of force upon or toward the person of another is justifiable to protect a third person when:
>
> > (1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;
> >
> > (2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
> >
> > (3) the actor believes that his intervention is necessary for the protection of such other person.

18 Pa.C.S. § 506(a). Further,

> [A]s provided by statute and as interpreted through our case law, to establish the defense of self-defense or defense of others it must be shown that: a) the slayer or the other he seeks to protect was free from fault in provoking or continuing the difficulty which resulted in the slaying; b) that the slayer must have reasonably believed that he or the other he seeks to protect was in imminent danger of death or great bodily harm, and that there was a necessity to use such force in order to save himself or the other therefrom; and c) the slayer or the other he seeks to protect did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Hornberger*, 74 A.3d 279, 284-85 (Pa.Super. 2013) (citation, emphasis, and brackets omitted); *see also Commonwealth v. La*, 640 A.2d 1336, 1346 (Pa.Super. 1994) (stating that the claims of self-defense and defense of others are generally addressed in the same manner). "In cases where [this defense is] an issue, the Commonwealth is required to prove beyond a reasonable doubt that the defense does not apply to the situation in order to sustain the conviction." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001).

- 5 -

Appellant contends that he was justified in the use of force for the protection of others. Appellant points to his trial testimony that he was at his father's residence for a child's birthday party, and that when he saw Mr. King, at least two of the children were still playing outside on a swing set. Appellant's brief at 14. According to Appellant, Mr. King was walking and stopping behind each of the trees on his father's property, one of which was approximately fifty feet from the swing set. *Id*. at 15. Appellant claims that he was afraid of what Mr. King would do, and argues that, given these circumstances, the Commonwealth failed to meet its burden of proof because it was reasonable for him to believe that use of force was necessary to protect the children who were still outside. *Id*.

In this case, the fact-finder found Appellant's testimony to be unbelievable. *See* Trial Court Opinion, 8/15/17, at 11; *see also **Commonwealth v. Smith***, 97 A.3d 782, 788 (Pa.Super. 2014) ("Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a [fact-finder] is not required to believe the testimony of the defendant who raises the claim."). However, the Commonwealth cannot sustain its burden of proof by relying "on the [fact-finder's] disbelief of the defendant's testimony . . . If there are other witnesses, however, who provide accounts of material facts, it is up to the [fact-finder] to reject or accept all, part or none of the testimony of any witness." *Id*. (internal quotation marks omitted).

Mr. King testified that he was washing his vehicle on his driveway on Enola Road when he heard a woman scream. N.T. Trial, 3/6-8/17, at 29-30. He turned up Ponderosa Road to investigate if anyone was in danger or needed help. *Id*. at 30. As he was walking up the middle of the road, Appellant and Bowermaster came out of a yard and into the driveway on Mr. King's left. *Id*. at 30-32. Bowermaster approached Mr. King from the right side of the road; Appellant walked directly towards him. Mr. King sensed that he was in danger, and tried to explain to the men that he was a neighbor, and that he had heard screaming. *Id*. at 33. As soon as he made this statement, Bowermaster punched Mr. King in the face. *Id*. Appellant threatened Mr. King that "he was going to get his ass kicked" if he did not leave the area. *Id*. at 135. Before Mr. King could leave, Appellant pushed him, and then Appellant and Bowermaster began to punch Mr. King with closed fists. *Id*. Mr. King told Appellant and Bowermaster that he did not want any problems with them, and turned to leave; however, they continued to punch Mr. King in the back and head. *Id*. One of the men pushed Mr. King to the ground, whereupon both men kicked him numerous times in the face and on his head, shoulder, chest and back. *Id*. at 33-34. When the beating stopped, Mr. King stumbled home covered in blood. *Id*. at 37.

Based on Mr. King's testimony, Appellant's use of force was not "immediately necessary" for the purpose of protecting others against the use of unlawful force by Mr. King. *See* 18 Pa.C.S. §§ 505, 506(a). Moreover,

Appellant was not "free from fault in provoking or continuing the difficulty which resulted in the [altercation]." *See Horberger*, *supra* at 284. Rather, as explained by the trial court,

> The evidence submitted at trial, taken in the light most favorable to the Commonwealth, established that Appellant and [Bowermaster] initiated a physical confrontation with [Mr. King] without provocation, and continued beating [him] until he was able to escape and stumble home. Appellant's own testimony aids the Commonwealth in disproving self-defense. This is first shown by demonstrating that [Bowermaster] initiated the conflict by striking the victim. Appellant testified that [Bowermaster] threw the first punch, which prompted [Mr. King] to state "I don't understand." Appellant then informed [Mr. King] that "You're gonna get your ass beat." [Mr. King] testified that immediately after the first punch, Appellant and [Bowermaster] continued punching and kicking him. Here, the evidence of record . . . reflects that [Mr. King] did not use or threaten to use force toward anyone. Rather, the evidence . . . reflects that Appellant and [Bowermaster] were the aggressors and that they beat [Mr. King] without provocation.
>
> [Additionally,] . . . there was no threat whatsoever to the children. . . . [Indeed, Appellant testified that he informed the children to stop playing and go inside, and that they were out of the area before the confrontation with Mr. King.] There was no evidence of any threatening conduct by [Mr. King] toward anyone; rather, the opposite was on display.
>
> [Finally,] . . . [Mr. King] was at least fifty feet away from any people that Appellant or [Bowermaster] claimed to have been protecting. Appellant and [Bowermaster] initiated the confrontation and landed the first blow against [Mr. King] without provocation. Therefore, the jury correctly concluded that Appellant did not act in self-defense of others . . .

Trial Court Opinion, 8/15/17, at 5-7 (footnotes omitted). We agree with the reasoning of the trial court, and on this basis conclude that Appellant's first claim lacks merit.

- 8 -

In his second claim, Appellant argues that the use of force on Mr. King was justified because he was defending his father's property. Section 507 of the Crimes Code provides, in relevant part, as follows:

(a) Use of force justifiable for protection of property. The use of force upon or toward the person of another is justifiable when the actor believes that such force is immediately necessary:

(1) to prevent or terminate an unlawful entry or other trespass upon land or a trespass against or the unlawful carrying away of tangible movable property, if such land or movable property is, or is believed by the actor to be, in his possession or in the possession of another person for whose protection he acts....

. . . .

(c) Limitations on justifiable use of force. --

(1) The use of force is justifiable under this section only if the actor first requests the person against whom such force is used to desist from his interference with the property, unless the actor believes that:

(i) such request would be useless;

(ii) it would be dangerous to himself or another person to make the request; or

(iii) substantial harm will be done to the physical condition of the property which is sought to be protected before the request can effectively be made.

18 Pa.C.S. § 507.

Appellant contends that it was immediately necessary to use force to eject Mr. King from Ponderosa Road because a trespass had already occurred and was occurring as Mr. King proceeded down the roadway. Appellant's brief at 17. Appellant argues that Ponderosa Road is a private road, and that "no

- 9 -

trespassing" signs had been posted, thereby placing Mr. King on notice that he was not welcome. *Id*. Appellant points to the trial testimony of Jesse Beichler, a resident of Ponderosa Road, that he had previously told Mr. King to stay off Ponderosa Road. *Id*. Appellant also claims that Mr. King was told to get off his father's property, and that Mr. King refused to leave. *Id*. at 18.

In the case *sub judice*, there is not a scintilla of evidence that it was "immediately necessary" to use force to eject Mr. King from Appellant's father's land, if Appellant actually believed that Mr. King was on his father's land. As the trial court explained,

> the evidence established that [Mr. King] was standing in the portion of Ponderosa Road that was a private street when he was accosted by Appellant and [Bowermaster]. The road was not owned by Appellant or his family, and they did not have the authority to unilaterally exclude anyone from it. Nor did Appellant or [Bowermaster] attempt to ask [Mr. King] to leave; instead they approached him, struck him, and continued pummeling him until he was able to escape. The evidence taken in the light most favorable to the Commonwealth established that [Mr. King] was not on any land owned by Appellant or his family, did not pose any threat making it too dangerous to ask him to leave, and that [Mr. King] posed no threat to the physical condition of Appellant's family's land. [Therefore, s]ufficient evidence existed for the jury to find that Appellant's actions were not justified by the use of force to protect properly . . .

Trial Court Opinion, 8/15/17, at 5-7 (footnotes omitted). We find that the record supports the trial court's determination, and on this basis conclude that Appellant's second claim lacks merit.

In his third claim, Appellant contends that the evidence presented at trial was insufficient to support his conviction of criminal conspiracy to commit simple assault. A criminal conspiracy conviction requires proof of:

(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, *i.e*., the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

*Commonwealth v. Galindes*, 786 A.2d 1004, 1010 (Pa.Super. 2001) (quoting *Commonwealth v. Spotz*, 756 A.2d 1139, 1162 (Pa. 2000)). Circumstantial evidence can include, but is not limited to, the relationship between the parties, the knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. *Commonwealth v. French*, 578 A.2d 1292, 1294 (Pa.Super. 1990). "These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail." *Id*.

Further, conspiracy need not be proven by evidence of explicit or formal agreement to commit an unlawful act. *See Commonwealth v. Manlin*, 411 A.2d 532, 534 (Pa.Super. 1979). While more than mere association must be shown, evidence of an appellant's actions and the circumstances in which they were taken is sufficient if it allows a reasonable inference that a corrupt agreement existed. *Id*.

The elements of simple assault are defined, in relevant part, as follows:

**(a)** ***Offense defined.*** **—** Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

> (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another; . . .

> . . . .

> (3) attempts by physical menace to put another in fear of imminent serious bodily injury . . .

18 Pa.C.S. § 2701. "Bodily injury" is defined in the crimes code as "impairment of physical condition or substantial pain." ***See*** 18 Pa.C.S. § 2301.

Appellant contends that the Commonwealth failed to prove that he entered an agreement with Bowermaster to assault Appellant. Appellant's brief at 20. While Appellant concedes that he and Bowermaster simultaneously assaulted Mr. King, he claims that this fact alone does not establish the existence of an agreement. ***Id***. According to Appellant, the evidence merely established that he acted as an accomplice. ***Id***. We disagree.

Here, the evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, established that Appellant and Bowermaster are step-brothers who were at Appellant's father's house attending a child's birthday party. They simultaneously approached Mr. King and surrounded him from different sides of the road. Bowermaster, without provocation, struck Mr. King, before Appellant threatened "You're going to get your ass beat." Thereafter, Appellant and Bowermaster proceeded to strike,

push, kick and otherwise physically assalt Mr. King. The jury, as the fact-finder, could, and did, make the reasoned inference from that evidence that Appellant and Bowermaster had an implicit agreement or understanding to use physical violence against Mr. King. *See Franklin*, *supra* at 722. Accordingly, Appellant's claim fails.

Appellant's fourth claim presents a challenge to the weight of the evidence supporting his convictions of simple assault and criminal conspiracy to commit simple assault.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

A challenge to the weight of the evidence concedes that sufficient evidence supports the verdict. *Id*. at 751. A new trial should not be granted merely because the judge would have assessed the credibility of witnesses differently and reached a different conclusion than the jury. *Id*. The trial court does not sit as the thirteenth juror in evaluating the weight of the evidence. *Id*. The trial court is not required to view the evidence in the light

most favorable to the Commonwealth. *Id*. at 751-52. "A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Cruz*, 919 A.2d 279, 282 (Pa.Super. 1997) (citations omitted).

Appellant contends that Mr. King was trespassing when he entered Ponderosa Road and proceeded toward his father's residence. Appellant points to Mr. Beichler's testimony that he had warned Mr. King to stay off Ponderosa Road and had posted a "no trespassing" sign. Appellant also claims that, "[d]espite his denial at trial, within an hour of the incident[, Mr.] King told the police that he had been hiding behind a tree." According to Appellant, "[t]hese two facts established that [Mr.] King was trespassing when he entered Ponderosa Road and that he committed a second trespass when he hid behind a tree on Appellant's father's property." Appellant's brief at 21. On this basis, Appellant contends that he acted lawfully when he exercised his right to use self-defense to terminate a trespass that was occurring. *Id*.

As noted above, in challenging the weight of the evidence supporting his convictions, Appellant concedes that the evidence was sufficient to support his convictions. *See Widmer*, *supra*. Moreover, we review a trial court's ruling on a challenge to the weight of the evidence for an abuse of discretion,

- 14 -

and give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing its determination. *Id*. With these considerations in mind, the trial court explained the basis for its rejection of Appellant's weight claim as follows:

> [Mr. King] testified that he was standing in the street near Appellant's father's property when Appellant and [Bowermaster] ambushed him. The physical evidence clearly reflected that [Mr. King] was beaten. The testimony of [Mr. King], if believed by the jury, would establish that Appellant and [Bowermaster] both perpetrated the beating. Appellant conceded in his testimony that [Bowermaster] struck [Mr. King] first . . .. The jury was free to weigh the credibility of [Mr. King's] version of events and Appellant's version when determining whether Appellant committed the crimes of simple assault and criminal conspiracy to commit simple assault. The jury clearly found [Mr. King] credible and Appellant not credible, which was not shocking to this court's conscious.

Trial Court Opinion, 8/15/17, at 11 (footnotes omitted).

We discern no abuse of discretion by the trial court in rejecting Appellant's challenge to the weight of the evidence supporting his convictions for simple assault and criminal conspiracy to commit simple assault. Based on the evidence presented at trial, the court was not shocked or stunned by Appellant's convictions. Accordingly, his fourth claim warrants no relief.

In his final claim, Appellant challenges the trial court's jury instruction on consciousness of guilt, flight or concealment. Our standard of review in assessing a trial court's jury instruction is as follows:

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing

- 15 -

its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa.Super. 2014).

Appellant contends that the trial court erred by providing the following instruction on consciousness of guilt, flight or concealment to the jury:

> Now there was evidence including the testimony of [Mr.] King that a car was seen leaving Ponderosa Road immediately after the incident and that of Trooper [Corey] Terek that [Mr.] King's hat had been moved from the assault scene and placed in the garage at 402 Ponderosa Road.
>
> [Appellant] maintains that he simply left the scene of the incident because his wife asked him to[,] and he had to return to his home in Harrisburg[,] and that [Mr.] King's hat was not concealed but simply hung in the garage at 402 Ponderosa Road.
>
> The credibility, weight, and effect of this evidence is for you to decide. Generally speaking, when a crime has been committed and a person thinks he is or may be accused of committing it and he flees the scene or conceals the evidence, such flight or concealment is a circumstance tending to prove the person is conscious of guilt.
>
> Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may do these things for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends on the facts and circumstances of this case and especially upon motives that may have prompted the flight or concealment. You may not find [Appellant] guilty solely on the basis of evidence of fight or concealment.

N.T. Trial, 3/6-8/17, at 196-97.

According to Appellant, although Mr. King testified that he saw a vehicle leave 402 Ponderosa Road following the incident, no witness identified

Appellant as either the driver or the passenger in the vehicle. Appellant also contends that Mr. King's trial testimony regarding the time frame in which the incident occurred and when the police arrived[1] was inconsistent with Trooper Terek's testimony.[2] Appellant points to his testimony that he stayed at his father's residence for at least one half hour after the incident occurred. Appellant's brief at 23. On this basis, Appellant contends that the evidence did not support the trial court's conclusion that he immediately fled the scene.

Appellant further claims that the trial court's conclusion that Appellant's family was not immediately forthcoming regarding Mr. King's hat is not supported by the evidence. Appellant asserts that the evidence of record demonstrates that his family told police that they had the hat, and then accompanied police to its location. *Id*. at 23-24. On this basis, Appellant argues that the trial court's jury instruction on consciousness of guilt, flight, or concealment was improper because there was no evidence that he fled from the scene or concealed Mr. King's hat in an attempt to conceal the evidence of a crime. *Id*.

_____

[1] Mr. King testified that the incident occurred between 8:45 p.m. and 9:00 p.m., and that the police arrived at his home at 9:30 p.m. *See* N.T. Trial, 3/6-8/17, at 43-44.

[2] Trooper Terek testified that he was dispatched to the King's residence around 9:30 p.m., and that it took approximately fifteen to twenty minutes to arrive at the scene. *See* N.T. Trial, 3/6-8/17, at 62, 72.

- 17 -

Here, Appellant does not contend that the instruction in question provides an inaccurate statement of the law; rather, he claims that the evidence of record did not support such an instruction. Upon careful review of the record, we disagree. As the trial court explained,

> [T]he Commonwealth presented evidence that Appellant fled the scene and that an attempt was made to conceal the crime. [Mr. King] observed a vehicle leaving Ponderosa Road shortly after the attack, which matched Appellant's testimony that he left the scene shortly after the incident. Trooper Terek testified that [Mr. King's] baseball cap, which he lost during the attack, was located inside Appellant's father's garage hanging on the wall. It was properly for the jury to consider the credibility of [Mr. King], Trooper Terek and Appellant, and decide whether Appellant left the scene because his wife was afraid, as he testified, or because he was attempting to avoid liability. It was also properly for the jury to decide whether [Mr. King's] baseball cap was hung inside the garage so that it could later be returned to [Mr. King], as Appellant testified, or because Appellant and his family were attempting to conceal that a crime had occurred. Notably, Trooper Terek testified that Appellant's family was not immediately forthcoming with [Mr. King's] hat, but the hat was only produced after interviews at the scene regarding the incident were underway. [*See* N.T. Trial, 5/6-8/17, at 68.] Appellant conceded that he observed [Mr. King] as he stumbled away from the scene, and that [Mr. King] looked pretty beat up. Despite that, Appellant did not call the police or call for medical assistance, but left the scene instead. Because those factual determinations were properly subject to determination by the jury, this court properly delivered the instruction of consciousness of guilt - flight or concealment . . . .

Trial Court Opinion, 8/15/17, at 13-14 (footnotes omitted).

Based on our review, the record supports the trial court's instruction on consciousness of guilt, flight, or concealment, and we find no abuse of discretion on the part of the trial court. Accordingly, Appellant's final claim warrants no relief.

- 18 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/30/2018