J-A22009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CORY M. CAMPBELL | |
| Appellant | No. 193 MDA 2016 |

Appeal from the Judgment of Sentence December 21, 2015
In the Court of Common Pleas of Columbia County
Criminal Division at No(s): CP-19-CR-0000620-2014

BEFORE:  GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED SEPTEMBER 07, 2016**

Appellant Cory M. Campbell appeals from the judgment of sentence entered in the Columbia County Court of Common Pleas, following his jury trial convictions for simple assault[1] and disorderly conduct[2] and his bench trial conviction for harassment.[3] We affirm.

The relevant facts and procedural history of this appeal are as follows. On May 9, 2014, Appellant was at the Capitol Bar with his family to celebrate his sister's graduation from Bloomsburg University.  Appellant's party consisted of five people – himself, his father Bruce Campbell ("Bruce"), his

_____

[1] 18 Pa.C.S. § 2701.

[2] 18 Pa.C.S. § 5503.

[3] 18 Pa.C.S. § 2709(a).

mother Kim Campbell, his sister Nicole, and Nicole's then-boyfriend, Sean Dwyer. N.T., 9/25/2015, at 122, 126. Bruce ordered a Glenlivet "neat". He tasted the drink and told the bartender he thought the drink had been watered down and that it tasted funny. The bartender told Bruce that the bar did not water down drinks. Later, the bill came, and Bruce asked if the Glenlivet was on the tab. The bartender told him that it was on the bill. Bruce paid the tab, but did not leave a tip. *Id.* at 145-146.

The family was standing and saying goodbye to each other. There is conflicting testimony about what happened next.

According to Bruce, a man, later identified as the bar owner, John Berger III, tapped him on the shoulder, pulled him away from the group, and said, "Who the F. do you think you are?" *Id.* at 147. Bruce walked back to his group, and when his daughter asked what the confrontation was about, he told her that it was probably some local drunk. *Id.* at 127. Two or three minutes later, Mr. Berger tapped Bruce on the shoulder again. *Id.* at 147. Bruce looked at him, then turned to ignore him. *Id.* Mr. Berger then yanked on Bruce's arm, causing him to bump into his wife, and moved him a few feet away from his group, keeping his hand on him. *Id.* at 147-148. Bruce threw his beer at Mr. Berger, grabbed his shirt and told him to take his hands off of him. *Id.* at 148. Mr. Berger continued to grab Bruce, then two other men, later identified as bouncers, grabbed Bruce from behind, one with his hand around Bruce's throat. Bruce's daughter then yelled, "Dad." *Id.* at 148.

- 2 -

According to Appellant and his mother, at this point, Appellant's mother said, "Look, Dad is being attacked." *Id.* at 123, 137. Appellant then turned to look and saw three men tussling with his father, Bruce. *Id.* at 137. He walked over and punched Mr. Berger on his shoulder. *Id.* Appellant then slipped on beer and fell down. *Id.* at 138. When he got up, the men were still struggling with Bruce, and he punched Mr. Berger on the side of the head. *Id.* Everyone fell down and fought, others joined in, and a bartender leapt from behind the bar onto the top of the pile. *Id.* at 139.

According to Mr. Berger, on the Friday night in question, he arrived at the restaurant, which was a little busier than usual due to graduation celebrations, and the bartender told him about his unhappy customer. *Id.* at 94-95. Mr. Berger decided he would open a new bottle of Glenlivet and have Bruce taste the scotch and compare it to the scotch he was given to show him that the Capitol Bar did not water down drinks. *Id.* at 95. He then tapped Bruce on the shoulder and Bruce looked at him, then ignored him. He tapped him again, then pulled on his sleeve to get his attention. *Id.* at 95-96. Bruce then threw his drink in Mr. Berger's face, and Mr. Berger does not recall anything after that point. *Id.* at 96. Mr. Berger had to get ten stitches on his forehead for the injuries he received. *Id.*

Appellant and Bruce were charged with assault-related offenses, and on September 25, 2015, the case proceeded to trial. Mr. Berger and bar manager Jason Gregas, who did not see how the altercation began, testified for the prosecution. Appellant, his mother, father, sister, and Sean Dwyer

- 3 -

testified for the defense. The Commonwealth also presented a video of the altercation, which both the prosecutor and defense counsel verbally annotated for the jury. Appellant's counsel claimed defense of others, and the court instructed the jury that it had to find the Commonwealth proved Appellant was not entitled to the justification defense beyond a reasonable doubt.

On September 25, 2015, the jury convicted Appellant of simple assault and disorderly conduct, but acquitted him of aggravated assault. On October 28, 2015, the court convicted Appellant of harassment. On December 21, 2015, the court sentenced Appellant to 10 days to 12 months' incarceration, the costs of prosecution, a $1000.00 fine, and restitution of $10.00, to be further determined after a hearing on restitution set for January 7, 2016. Appellant filed a post sentence motion challenging the sufficiency and weight of the evidence for his convictions. On January 4, 2016, the court denied Appellant's post sentence motion. On January 11, 2016, the court amended the restitution from $10.00 to $16,437.00.[4] On

---

[4] Appellant did not raise the issue of restitution, and neither will this Court, because defense counsel stipulated to the arrangement at sentencing. The sentencing court specifically noted that it needed to conduct a hearing on restitution. It gave Appellant the choice of deferring sentencing or setting restitution at $10.00, to be altered after a specific restitution hearing. Appellant selected the latter option. *See* N.T. Sentencing, 12/21/2015, at 11-13, 16. Further, the parties advised at argument that they had resolved the issue of restitution by agreement.

January 29, 2016, Appellant filed a notice of appeal. On March 1, 2016, Appellant filed a Pa.R.A.P. 1925(b) statement, and the court filed a Pa.R.A.P. 1925(a) opinion on March 15, 2016.

Appellant raises the following issues for our review:

A) DID THE COMMONWEALTH PRESENT SUFFICIENT EVIDENCE TO OVERCOME THEIR BURDEN OF PROOF BEYOND A REASONABLE DOUBT THAT [APPELLANT] DID NOT ACT IN SELF DEFENSE AND/OR IN DEFENSE OF OTHER[S], A DEFENSE RAISED BY [APPELLANT] AT TRIAL?

B) WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE AS THE COMMONWEALTH CHARGED UNDER THE CRIMINAL COMPLAINT THAT THE APPELLANT COMMITTED SIMPLE ASSAULT BY PUNCHING JOHN BERGER III SO VICIOUSLY THAT MR. BERGER BECAME DEFENSELESS, FELL TO THE GROUND, AND SUFFERED A CONCUSSION AND A LACERATION WHEN THE COMMONWEALTH OFFERED NO EVIDENCE TO SUPPORT THIS ALLEGATION AT TRIAL?

C) WAS THE EVIDENCE INSUFFICIENT TO SUPPORT A VERDICT BECAUSE THE SURVEILLANCE VIDEOTAPES SHOWED THE BAR STAFF CAUSING A REAL PERCEIVED FEAR OF HARM TO ANOTHER, NAMELY BRUCE M. CAMPBELL, AND NO REASONABLE JURY COULD HAVE BELIEVED [APPELLANT] INITIATED CONTACT OR CAUSED ANY REAL HARM AFTER VIEWING THIS TAPE?

D) DID THE COURT COMMIT AN ERROR WHEN IT FOUND [APPELLANT] GUILTY OF HARASSMENT- SUBJECT OTHER TO PHYSICAL CONTACT?

E) DID THE [TRIAL COURT] ERR ALLOWING IN THE COLOR PHOTOS OF JOHN BERGER'S INJURIES OVER THE OBJECTION OF COUNSEL FOR [APPELLANT] AS THEY WERE UNDULY PREJUDICIAL AND WOULD HAVE TAINTED THE JURY TO FIND ONE OF THE [APPELLANTS] RESPONSIBLE FOR INJURIES THAT THE EVIDENCE DID NOT SHOW WAS CAUSED BY [APPELLANT]?

Appellant's Brief at 5-6.[5]

In issues A, C, and D, Appellant challenges the sufficiency of the evidence for his convictions. He argues the prosecution failed to establish, beyond a reasonable doubt, that Appellant did not act in self-defense or the defense of others, because the witnesses it presented offered nothing to disprove the defense. Appellant complains that Mr. Berger testified that he had no recollection of anything after the beer was thrown in his face, and Jason Gregas testified that he did not see the actual incident or see Appellant do anything. He claims the video evidence shows Bruce being attacked and Appellant intervening. Further, he claims the video shows that he punched Mr. Berger two times, and neither of these punches caused him to fall down or could have caused the injuries Mr. Berger sustained. He further contends that he did not commit disorderly conduct because the disturbance started before he intervened. Thus, he concludes the evidence presented was insufficient to support his convictions. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every

---

[5] Appellant fails to separate his brief into sections that correlate with his questions presented.

element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super.2005)).

Appellant was convicted for violating the following statutes:

**§ 2701. Simple assault**

**(a) Offense defined.--** Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(2) negligently causes bodily injury to another with a deadly weapon;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury; or

(4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention

- 7 -

facility or mental hospital during the course of an arrest or any search of the person.

18 Pa.C.S. § 2701.

### § 5503. Disorderly conduct

**(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503.

### § 2709. Harassment

**(a) Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

(1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;

(2) follows the other person in or about a public place or places;

(3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose;

(4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;

(5) communicates repeatedly in an anonymous manner;

(6) communicates repeatedly at extremely inconvenient hours; or

(7) communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6).

18 Pa.C.S. § 2709.

Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there is sufficient evidence to enable the jury to find every element of Appellant's crimes beyond a reasonable doubt. The testimony and video evidence admitted at trial supported the jury's finding that Appellant intentionally punched Mr. Berger at least twice while they were in a crowded bar. This finding alone could support all of his convictions.

However, even if the Commonwealth presented sufficient evidence to support Appellant's convictions, the jury was instructed **not** to convict Appellant unless it found the Commonwealth had presented evidence to prove that Appellant did **not** have a justification defense of defense of others, beyond a reasonable doubt. There was sufficient evidence for the jury to find that the Commonwealth met this burden.

The following statutes govern the defense of self-defense and defense of others:

**§ 506. Use of force for the protection of other persons**

**(a) General rule.**--The use of force upon or toward the person of another is justifiable to protect a third person when:

(1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to

protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3) the actor believes that his intervention is necessary for the protection of such other person.

**(b) Exception**.--Notwithstanding subsection (a), the actor is not obliged to retreat to any greater extent than the person whom he seeks to protect.

18 Pa.C.S. § 506.

### § 505. Use of force in self-protection

**(a) Use of force justifiable for protection of the person.--**The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.**--

\* \* \*

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S. § 505.

Here, the video evidence enabled the jury to view Appellant punching Mr. Berger, and it was free to believe the testimony of Mr. Berger or Appellant's family. The jury was properly instructed on the defense of others defense, and it chose to believe that the Commonwealth met its burden of proof. It very possibly found that it was not necessary for Appellant to use the degree of force that he used to protect his father. The jury could have found this from the video, notwithstanding Appellant's and his family's testimony. Thus, his challenge to the sufficiency of the evidence for his convictions merits no relief.

In issue B, Appellant purports to challenge the weight of the evidence presented.[6] He claims no rational jury could have concluded that he was guilty of the crimes for which he was convicted, and that the verdict was against the weight of the evidence. This issue merits no relief.

We review challenges to the weight of the evidence as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

---

[6] Technically, in his question presented, he states there was "no" evidence presented to support his convictions, which would go to the sufficiency of the evidence. However, as he raised his weight claim in his post-sentence motion, his Pa.R.A.P. 1925(b) statement and sporadically throughout his brief, we will address his challenge to the weight of the evidence.

> ***Commonwealth v. Small***, 741 A.2d 666, 672–73 (Pa.1999) [*cert. denied*, 121 S.Ct. 80, 148 L.Ed.2d 42 (U.S.2000)]. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Devine***, 26 A.3d 1139, 1146 (Pa.Super. 2011), *appeal denied*, 42 A.3d 1059 (Pa.2012) (some internal citations omitted).

This Court has recognized that "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa.Super.2014). Accordingly, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa.2013). A trial judge should not grant a new trial due to "a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Id.*** Instead, the trial court must examine whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." ***Id.*** Only where the jury verdict "is so contrary to the evidence as

to shock one's sense of justice"[7] should a trial court afford a defendant a new trial. *Id.*

The jury's verdict does not shock one's sense of justice. The verdict likely reflects the jury's perception that Appellant could have approached Mr. Berger and the bouncers and tried to talk some sense into them rather than throwing the first actual punch. The figure of Justice is not tottering on her pedestal.

In his final issue, Appellant challenges the trial court's evidentiary ruling. Specifically, he claims that the color photographs of Mr. Berger's injuries were unduly prejudicial, and that the court erred by allowing them into evidence. Again, we disagree.

"The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa.2015) (quoting *Commonwealth v. Reid*, 99 A.3d 470, 493 (Pa.2014)).

> We recognize that, pursuant to Pa.R.E. 403, relevant evidence may be excluded "if its probative value is outweighed by a danger of ... unfair prejudice." In a

---

[7] When "the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Cruz*, 919 A.2d 279, 282 (Pa.Super.2007) (internal citations omitted).

Comment to Rule 403, unfair prejudice is defined as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." …. Any possibility of unfair prejudice is greatly mitigated by the use of proper cautionary instructions to the jury[.]

***Commonwealth v. Jemison***, 98 A.3d 1254, 1262 (Pa.2014).

Further, "[t]he law presumes that the jury will follow the instructions of the court." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1184 (Pa.2011) (quoting ***Commonwealth v. Spotz***, 896 A.2d 1191, 1224 (Pa.2006)).

Here, outside of the jury's presence, the court discussed with the prosecutor and defense counsel the admission of the color photographs in question. The following transpired:

THE COURT: would anybody object to an inflammatory photograph charge?

[BRUCE'S COUNSEL]: No, your Honor.

THE COURT: With an inflammatory photograph charge is [there] any objection to the use of these exhibits as proposed?

[BRUCE'S COUNSEL]: No objections, your Honor.

[APPELLANT'S COUNSEL]: No, your Honor.

THE COURT: I will add an inflammatory photograph charge to the Jury.

N.T., 9/25/2015, at 14.

The court gave an inflammatory photograph charge to the jury immediately before the photographs were presented. ***Id.*** at 104. Appellant failed to object to their admission at the moment of presentation and only objected later, after the court gave the agreed upon instruction. Thus,

- 14 -

Appellant waived his claim by failing to make a timely objection. ***See***

***Commonwealth v. Tucker***, ___ A.3d ___, 2016 WL 40356022016

(Pa.Super.2016). Even if Appellant had not waived this claim, the jury is

presumed to follow the court's instruction. Thus, Appellant has suffered no

prejudice from the admission of the evidence. Moreover, the photographs

were relevant to show Mr. Berger's injuries and not unfairly prejudicial, and

the court did not abuse its discretion in allowing their admission.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2016