J-A06003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
ANWAR A. CAPERS   :
  :
Appellant   :   No. 800 MDA 2018

Appeal from the Judgment of Sentence January 23, 2018
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001048-2017

BEFORE: OTT, J., NICHOLS, J., and PELLEGRINI*, J.

MEMORANDUM BY OTT, J.:                           **FILED JUNE 26, 2019**

Anwar A. Capers appeals from the judgment of sentence imposed on January 23, 2018. On December 13, 2017, a jury found Capers guilty of unlawful delivery of a controlled substance under accomplice liability and possession of a controlled substance.[1] The trial court sentenced Capers to serve an aggregate term of 16 to 48 months' incarceration. On appeal, Capers challenges the sufficiency and weight of the evidence. Based upon the following, we affirm.

---

* Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), 18 Pa.C.S.A. § 306, and 35 P.S. 780-113(a)(16), respectively.

As the parties are well acquainted with the facts and procedural history of this case, which are fully set forth in the trial court's opinion, we do not restate them. *See* Trial Court Opinion, 7/13/2018, at 1–7.

In his issues on appeal, Capers challenges the sufficiency of the evidence underlying his conviction for unlawful delivery of a controlled substance and the weight of the evidence. For the reasons discussed below, these claims fail.

"A claim challenging the sufficiency of the evidence is a question of law."

***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute its judgment for that of the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. The entire record must be evaluated and all evidence actually received must be considered. The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235–1236, 1237 (Pa. 2007) (citations and quotation marks omitted).

A weight of the evidence claim concedes the sufficiency of the evidence. ***Widmer***, ***supra*** at 751. A weight claim addresses the discretion of the trial

- 2 -

court. *Id.* at 752 (citation omitted). On review, the appellate court decides whether the trial court abused its discretion when ruling on the weight claim; it does not consider the underlying question of whether the verdict was against the weight of the evidence. *Id.* at 753. We will only find an abuse of discretion where the verdict is so contrary to the evidence as to shock one's sense of justice. Our review of a challenge to the weight of the evidence supporting the verdict is settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*) (citation omitted), *appeal denied*, 168 A.3d 1237 (Pa. 2017).

Based on our review of the record, the arguments presented by Capers, and the relevant case law and statutes, we conclude Capers' sufficiency and weight challenges warrants no relief. Furthermore, as the trial court has addressed these issues in its opinion, we adopt the trial court's thorough and

well reasoned opinion as dispositive of Capers' sufficiency and weight claims and affirm on that basis. **See** Trial Ct. Op., at 7–16. Accordingly, no relief is due.

Judgment of sentence affirmed. We direct the parties to attach a copy of the trial court opinion in the event of further proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/26/2019

COMMONWEALTH

v.

ANWAR A. CAPERS

: IN THE COURT OF COMMON PLEAS OF
: CUMBERLAND COUNTY, PENNSYLVANIA
:
:
:
:
: TRIAL COURT NO. CP-21-CR-1048-2017
: SUPERIOR COURT NO. 800 MDA 2018

OPINION PURSUANT TO PA. R.A.P. 1925

FINDINGS OF FACT & PROCEDURAL HISTORY

Peck, J., July 12, 2018

On December 11th through 13th, 2017, Appellant[1] was tried by jury on three criminal counts related to an incident that occurred on March 3, 2017 in Carlisle Borough, Cumberland County, Pennsylvania.[2] The Commonwealth's evidence to support the charges was as follows:

On March 3, 2017, Detective Christopher Collare, a Carlisle Police Department Detective and member of the Cumberland County Drug Task Force, and several other officers conducted a controlled buy of heroin with the use of a confidential informant ("CI") at the Harvon Motel.[3] At 4:13 p.m., the CI, under the supervision of the Detective, placed a call to purchase heroin from the motel room phone to a (267) area code phone number.[4] The call was recorded.[5] After the CI ordered a "bundle," he was searched and

---

[1] "Appellant" and "Defendant" are used interchangeably for the purposes of this opinion.

[2] Appellant was charged at Count 1 with Unlawful Delivery of a Schedule I Controlled Substance – Heroin; at Count 2 with Criminal Conspiracy to Unlawful Delivery of a Schedule I Controlled Substance – Heroin; and at Count 3, Unlawful Possession of a Schedule II Controlled Substance – Methamphetamine. See Criminal Information, June 13, 2017. Defendant was charged at Counts 1 and 3 under the theory of accomplice liability as well.

[3] Transcript of Proceedings, In Re: Jury Trial, December 12, 2017, at 10-11 (Peck, J.) (hereinafter "N.T. Vol. II at ___").

[4] Id. at 16-17.

[5] Id. at 18. Only the CI's end of the conversation was recorded due to the lack of a speakerphone on the landline that was used to place the call. Id. When the audio recording was played for the jury, the seller's voice could not be heard. See generally Commonwealth's Exhibit No. 6, Audio Recording Compact Disc, December 12, 2017.

*A-1*

then provided with serialized funds to pay for the drugs.[6] The Detective then hid in the bathroom, with the door ajar.[7] At 5:02 p.m., Sadiq Beasley[8] arrived and delivered the heroin.[9] The controlled buy was captured on video.[10] After Mr. Beasley left the room, the CI handed the Detective sixteen bags of heroin.[11] The Detective radioed to the other officers that it was a "good purchase" and two individuals were arrested in the motel parking lot while attempting to leave the scene: Mr. Beasley and the instant Defendant.[12] Defendant was driving the vehicle.[13]

The vehicle was secured and taken to the police impound lot.[14] It was later searched and photographs were taken of its contents.[15] Multiple cell phones and cell phone chargers were found in the car.[16] The cell phone found in the center console of the vehicle had the same phone number as the phone number that the CI called to make the controlled buy.[17] No luggage, travel kits, or workman's tools were found.[18] The vehicle was registered and insured in the Defendant's name, at a Philadelphia address.[19] Mr. Beasley is also from Philadelphia.[20] A second license plate with a different number was found in the vehicle, also registered to the Defendant.[21] A receipt found in the car showed

---

[6] See Commonwealth's Exhibit No. 6, Audio Recording Compact Disc, December 12, 2017; N.T. Vol. II at 20. A "bundle" is several postage stamp-sized bags of heroin, typically 10 or more bags. N.T. Vol. II at 20.

[7] N.T. Vol. II at 24.

[8] Sadiq Beasley is the co-Defendant.

[9] N.T. Vol. II at 20, 23-24.

[10] Id. at 23.

[11] Id. at 24. The parties stipulated that the substance contained in the bags was heroin. Id. at 26. The parties also stipulated that later lab testing did not find fingerprints on any of the bags. Id. at 27.

[12] N.T. Vol. II at 24, 28, 31.

[13] Id. at 30.

[14] Id. at 28.

[15] Id. at 34.

[16] A black flip phone was found in the center console. N.T. Vol. II at 35, 63. A black iPhone was found in the passenger door. Id. Another inoperable flip phone was found in the driver's side front door panel. Id. at 54-55, 64. A charger matching the black phone found in the center console was found in the glove box. Id. at 56. An iPhone charger was found in the center console area. Id. at 78-79.

[17] N.T. Vol. II at 56, 65-68.

[18] Id. at 37.

[19] Id. at 46-48.

[20] Id. at 28.

[21] Id. at 51-52.

A-2

that Defendant was in Philadelphia at 1:51 p.m. the previous day.[22] Two other receipts found in the vehicle placed the Defendant in Philadelphia on February 4, 2017, and in Carlisle on February 17, 2017.[23] During the search of Mr. Beasley's person, $1,233 in cash was discovered, including the serialized monies given to the CI to purchase the drugs, and twenty-four of the bills were $20 bills.[24] Defendant had $1,198 in cash, an iPhone, and two pills on his person.[25]

Detective Collare testified that he has been involved in numerous drug investigations and that Philadelphia is the "source city" for approximately 80% of the heroin found in Carlisle.[26] Some other indications of drug trafficking are multiple cell phones, specifically "burner phones," multiple individuals working together, and multiple license plates or vehicles to conceal identity or travel.[27] On cross-examination, Detective Collare admitted that police were expecting Mr. Beasley and another person to deliver the drugs during the controlled buy, and had no prior information that the Defendant would be involved.[28] He also admitted that the cell phone charger found in the glove box was likely a universal charger, also accessible to Mr. Beasley, the passenger.[29]

The co-Defendant, Sadiq Beasley, testified that he pled guilty to the charges of Possession with Intent to Deliver (PWID) heroin and Criminal Conspiracy to PWID of heroin in exchange for a *nolle prosequi* of a third charge, and as part of the plea, he admitted to the facts as related by the Commonwealth as it pertained to those charges.[30] Even though the facts he admitted to as part of his plea bargain included that he conspired with the instant Defendant to deliver heroin on March 3, 2017, he testified at trial that he

---

[22] N.T. Vol. II at 50.

[23] Id. 49, 53.

[24] Id. 58-59. $20 bills are significant in drug investigations because heroin is usually purchased in $20 denominations. Id. at 59.

[25] N.T. Vol. II at 59-60, 64, 84-85. The parties stipulated that the two pills contained methamphetamine. Id. at 65.

[26] Id. at 4-5, 8.

[27] Id. at 8-10, 52, 62-63.

[28] Id. at 69-70.

[29] N.T. Vol. II at 78.

[30] Id. at 92, 94-96.

A-3

never conspired with the Defendant.[31] Specifically, he stated that he agreed with whatever the District Attorney said in order to get a lower plea and he couldn't remember the facts he admitted.[32] He stated that on March 3, 2017, he asked the Defendant for a ride to the Greyhound bus station and asked him to stop at the Harvon motel on the way there.[33] He dictated and signed two sworn statements of the Defendant's non-involvement in the controlled buy, once on April 28, 2017 and again on September 11, 2017.[34] He entered his plea of guilty to conspiracy with this Defendant on August 29, 2017.[35]

K-9 Officer Jeffrey Kurtz of the Carlisle Police Department testified that he was present in the parking lot of the Harvon motel on March 3, 2017 during the time the arrest of the Defendant and Mr. Beasley was made.[36] He stated that after Defendant was ordered to leave the vehicle, he saw Defendant place a small, dark object that was in his right hand down into the center console before he got out of the car.[37] He believed that item was a cell phone.[38] He also testified that he had seen Mr. Beasley the previous night driving the Defendant's vehicle with two passengers inside but could not say whether the Defendant was one of the passengers.[39]

After the Commonwealth rested its case, this Court heard argument by the parties regarding the Defendant's Motion for Acquittal on Counts 1 and 2.[40] After consideration of the arguments of counsel, the Defendant's motion was denied.[41]

Defendant presented testimony from several witnesses to rebut the charges: Heather Klinger, a "subpoena compliance specialist" for T-Mobile; Alesye Ortiz;

---

[31] Id. at 92.

[32] Id. at 92-94.

[33] Id. at 98, 108.

[34] N.T. Vol. II at 98-100, 102-05. The letters were an attempt to get the District Attorney to drop the conspiracy charges against himself and/or the Defendant. Id. at 104-06.

[35] Id. at 103.

[36] Id. at 110-12.

[37] Id. at 114-15.

[38] N.T. Vol. II at 115.

[39] Id. at 115-17.

[40] At trial, as in the instant appeal, Defendant argued that the Commonwealth did not prove that the Defendant had the intent to facilitate a delivery of heroin and so he could not be convicted as a matter of law with Unlawful Delivery of heroin as an accomplice or of Criminal Conspiracy to Unlawful Delivery of heroin. See generally N.T. Vol. II at 123-30.

[41] Id. at 130.

A - 4

Defendant's girlfriend; and Jermaine Lewis, the general manager of 11th Street Auto Sales in Philadelphia, where Defendant purchased his vehicle. Their testimony was as follows:

Defendant subpoenaed the telephone records for his personal phone, which was the iPhone that was found in his pocket during his arrest.[42] The phone records showed that there were a substantial number of calls over an approximately one-month period between his personal phone and Mr. Beasley's personal iPhone.[43] There were also numerous calls between the Defendant's phone and the black "center console" phone that had been involved in the controlled buy.[44] The records also showed that the Defendant's phone initiated an approximately 15-minute phone call at 5:03 p.m. on March 3, 2017.[45] On cross-examination, the Commonwealth pointed out that there was an unusual amount of communication between the Defendant's phone and Mr. Beasley's personal phone on March 2 and March 3, 2017 (the day before and the day of the incident).[46] The phone records also indicated calls between the Defendant's personal phone and the phone used in the controlled buy over the same time period.[47]

Ms. Ortiz testified that Defendant was with her on the day and night of March 2, and the morning of March 3, 2017.[48] She stated that she is from Carlisle, the Defendant is from Philadelphia, and he comes to visit her every other weekend.[49] On cross-examination, the witness stated she has been in an intimate relationship with the Defendant for eight years, and that she does not know Mr. Beasley.[50] She also testified that she had a specific recollection of staying up past midnight on March 2nd and

---

[42] Id. at 60-61, 133-34.

[43] Id. at 62, 136, 140-43; Def.'s Exhibit No. 5, T-Mobile Phone Records, 1-5, December 12, 2017. The records reflected activity from February 1, 2017 to March 3, 2017. N.T. Vol. II at 142-43.

[44] N.T. Vol. II at 143-44; Def.'s Exhibit No. 5, T-Mobile Phone Records, 6, December 12, 2017.

[45] N.T. Vol. II at 145, 155-56.

[46] Id. at 146, 148-52. There were calls between the phones on March 2nd at 10:03 a.m., 1:57 p.m., 2:28 p.m., 2:44 p.m., 5:45 p.m., 5:57 p.m., 5:58 p.m., 6:15 p.m., 10:14 p.m., 10:23 p.m., 10:25 p.m., 10:30 p.m., 10:40 p.m., 10:50 p.m., and on March 3rd at 1:03 a.m., 2:25 a.m., 2:45 a.m., 2:49 a.m., and 3:06 a.m.

[47] Id. at 153. There were calls between the phones on March 3rd at 12:44 a.m. and 1:03 a.m.

[48] Id. at 157-59.

[49] N.T. Vol. II at 160-61. The witness immediately thereafter stated that he visits her every weekend, if she calls him. Id. at 161.

[50] Id. at 162.

A- 5

watching a movie with Defendant, and that the Defendant was not on the phone a lot that night.[51]

Mr. Lewis telephonically testified that his office had mistakenly given the Defendant and another customer each other's license tags.[52] He provided Defendant with the correct tag after the other customer returned it to the shop.[53] He asked Defendant to return the other tag, which he never did.[54] Because he never received the incorrectly issued tag back from the Defendant, he processed it as a "dead tag" which would not exist in PennDOT records.[55]

Based on the foregoing evidence, on December 13, 2017, at the conclusion of the jury trial, Appellant was found guilty of the following charges: Count 1, Unlawful Delivery of a Schedule I Controlled Substance – Heroin, an ungraded felony; and Count 3, Unlawful Possession of a Schedule II Controlled Substance – Methamphetamine, an ungraded misdemeanor.[56] Appellant was found not guilty at Count 2, Criminal Conspiracy to Unlawful Delivery of a Schedule I Controlled Substance – Heroin, an ungraded felony.[57] On January 23, 2018, following review of a pre-sentence investigation report (PSI), we sentenced Appellant to the following: on Count 1, Appellant was given a state prison sentence of not less than sixteen months nor more than forty-eight months,[58] and was further required to pay the costs of prosecution, a $100 fine, to pay $100 jointly and severally with his co-Defendant to the Drug Task Force, and to have no contact with his co-Defendant; on Count 3, Appellant was required to pay the costs of prosecution and was given a concurrent state prison sentence of not less than three months nor more than six months.[59]

---

[51] Id. 163-64.
[52] Id. at 167-68, 172-73.
[53] N.T. Vol. II at 168-69.
[54] Id. at 168-69.
[55] Id. II at 173-74.
[56] See Order of Court, In Re: Verdict/Appear for Sentence, December 13, 2017 (Peck, J.).
[57] Id.
[58] Appellant was given credit for time served between March 3, 2017 and December 13, 2017.
[59] Order of Court, In Re: Sentence, January 23, 2018 (Peck, J.).

A – 6

On May 4, 2018, Appellant filed timely post-sentence Motions for Judgment of Acquittal and for a New Trial, alleging there was insufficient evidence adduced at trial to support his conviction on the Unlawful Delivery charge as a matter of law, and furthermore that the jury's verdict of guilty was against the weight of the evidence.[60] After a review of the Appellant's brief in support of his Motions and the Commonwealth's Response in objection thereto, on May 7, 2018, this Court denied Appellant's Motions.[61] On May 16, 2018, Appellant filed his Notice of Appeal to the Superior Court.[62] On May 16, 2018, this Court directed the filing of a concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. §1925(b).[63] On May 24, 2018, Appellant filed his Concise Statement of Errors. In his Statement of Errors, Appellant complains:

1. The trial court erred when it denied the Defendant's motion for acquittal based on the sufficiency of the evidence. Specifically, the Commonwealth failed to prove the Defendant acted with the requisite intent required to prove count one, Unlawful Delivery, Manufacture, Possession with Intent to Deliver a Schedule I Controlled Substance – Heroin under the theory of accomplice liability.
2. The trial court erred when it denied the Defendant's motion for a new trial based on the weight of the credible evidence presented at trial. The jury verdict shocked one's sense of justice demanding the award of a new trial.[64]

This Court offers this Opinion, pursuant to Pa.R.A.P. 1925(a), in support of its judgments.

## DISCUSSION

Pennsylvania's Controlled Substance, Drug, Device, and Cosmetic Act provides, in relevant part: "[t]he following acts and the causing thereof within the Commonwealth are hereby prohibited:...knowingly or intentionally **possessing** a controlled or counterfeit

---

[60] See Def.'s Post-Sentence Motions, April 11, 2018.
[61] In Re: Post-Sentence Motions, Order of Court, May 7, 2018 (Peck, J.).
[62] Def.'s Notice of Appeal, May 16, 2018.
[63] Order of Court, May 16, 2018 (Peck, J.).
[64] Def.'s Concise Statement of the Errors Complained of on Appeal, May 24, 2018.

A- 7

substance by a person not registered under this act [] unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner…[and] the manufacture, **delivery**, or possession with intent to manufacture or deliver, a **controlled substance** by a person not registered under this act." 35 P.S. §780-113(a)(16),(a)(30)(emphasis added). The Pennsylvania Crimes Code also provides that "[a] person is legally accountable for the conduct of another person when…he is an accomplice of such other person in the commission of the offense." 18 Pa.C.S.A. §306(b)(3). "An accomplice is equally criminally liable for the acts of another 'if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense.'" Commonwealth v. Toritto, 67 A.3d 29, 34 (Pa. Super. 2013)(internal citations omitted). Pennsylvania courts have held that in order to prove accomplice liability, the following must be present:

> First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

Commonwealth v. Murphy, 844 A.2d 1228, 1234 (Pa. 2004)(internal citations omitted).

On appeal, Appellant first challenges the sufficiency of the evidence presented by the Commonwealth at trial to sustain his conviction for Unlawful Delivery of heroin as an accomplice under 35 P.S. §780-113(a)(30) and 18 Pa.C.S.A. §306(b)(3). As his second issue on appeal, Appellant also challenges his conviction based on the weight of the credible evidence presented at trial. Appellant does not identify which criminal Count to

A-8

which his weight claim applies, so it is difficult for this Court to address Appellant's second argument with specificity. Regardless, we address both of Appellant's arguments below.

### a. Sufficiency of the Evidence

Defendant contends that the verdict of guilty was based on insufficient evidence as a matter of law, and as such, this Court erred by denying his Motion of acquittal. We disagree. "The test to be applied in ruling on a [motion for judgment of acquittal] is whether, accepting as true all of the prosecution's evidence and all reasonable inferences therefrom, it is sufficient to support a finding by the fact-finder that the defendant is guilty beyond a reasonable doubt." Commonwealth v. Snowdy, 603 A.2d 1044, 1045 (Pa. Super. 1992) (internal citations omitted).[65] "When a defendant does not rest following denial of a [motion for judgment of acquittal], but instead presents a defense, the correctness of the ruling on the [motion] is not preserved for appellate review; the proper procedure is to challenge the sufficiency of the evidence." Commonwealth v. Johnson, 2018 PA Super 193, *5 (Pa. Super. 2018) (*quoting* Commonwealth v. Zambelli, 695 A.2d 848, 849 n.1 (Pa. Super 1997)). The appellate standard of review for a challenge to the sufficiency of the evidence is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the

---

[65] A "Motion for Judgment of Acquittal" was previously referred to in case law as a "demurrer." Pa.R.Crim.P. Rule 606 standardized the language so that all challenges to the sufficiency of the evidence raised on appeal are now referred to as motions for judgment of acquittal, and the use of the word "demurrer" in past law or present motions does not affect their present validity under the new language of the Rule. See comment to Pa.R.Crim.P. Rule 606.

*A-* '9

combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. McDonald, 17 A.3d 1282, 1285 (Pa. Super. 2011)(internal citations omitted). Additionally, the jury is not obligated to accept a defendant's evidence. Commonwealth v. Morales, 91 A.3d 80, 90 (Pa. 2014).

Defendant seeks to overturn his conviction by pointing out that individual pieces of circumstantial evidence presented by the Commonwealth were insufficient to establish that Defendant had the required *mens rea* to impute to him liability as an accomplice in the drug delivery at issue.[66] Specifically, Defendant argues that his momentary

---

[66] In his post-sentence motions, Defendant cites to two Pennsylvania cases to show there was not enough evidence in this case to hold him liable as an accomplice, *viz.* Commonwealth v. Torrito, 67 A.3d 29 (Pa. Super. 2013) and Commonwealth v. Murphy, 844 A.2d 1228 (Pa. 2004). In Torrito, the defendant drove his cousin to a bar, where his cousin sold narcotics to an undercover agent. Torrito, *supra* at 32. The defendant was intermittently present for their discussions regarding the sale, although he personally did not participate. Id. The defendant then gave his car keys to his cousin to retrieve the drugs from the vehicle after the sale was made. Id. In Torrito, as here, the defendant was found guilty of unlawful delivery of a controlled substance under an accomplice theory of liability, and was found not guilty on the companion charge of conspiracy. Id. On appeal, the Superior Court held that the evidence was not insufficient as a matter of law to sustain the verdict of guilty because the jury could infer from the testimony that defendant drove the car to the scene, was present during the transaction, and gave his car keys to his cousin, that the defendant had knowledge of and intended to aid in the underlying crime. Id. at 34-35. In Murphy, the defendant was solicited on the street to make a drug sale by an undercover police officer. Murphy, *supra* at 1231. After assurances that he was "not a cop," defendant called over another individual who ultimately consummated the drug sale with the officer, in which serialized funds were used to make the purchase, outside of the defendant's presence. Id. The defendant later asked the officer for half of one bag of heroin after the deal was made. Id. at 1231. When the defendant was arrested, he did not have any drugs or marked bills on his person. Id. The Supreme Court upheld the defendant's convictions for unlawful delivery of a controlled substance as an accomplice and conspiracy to deliver a controlled substance, as the jury could have found, in light of the evidence that the defendant introduced the buyer and seller, and that he approached the officer after the sale was made requesting a portion of the drugs "for his efforts," that he had an active interest in the sale and intended to help the principal deliver the contraband. Id. at 1237-38. Upon review, we find that nothing in either case above mentioned precludes a finding of guilty in the instant case for Unlawful Delivery of Heroin as an accomplice.

possession of the cell phone used to set up the controlled buy, his presence outside the motel where the drug transaction took place, his driving the car with Mr. Beasley in it away from the scene where Mr. Beasley had just sold heroin to a CI, his association with Mr. Beasley and Philadelphia, and the large amount of money and the drugs recovered from his person at the time of arrest do not bear upon his knowledge or intent with regard to the delivery of heroin.[67] As outlined above, the Commonwealth is permitted to prove the charges against a defendant by purely circumstantial evidence, so long as the totality of the evidence convinces the fact-finder beyond a reasonable doubt of the Defendant's guilt. Here there was sufficient circumstantial evidence for the jury to reasonably conclude that Defendant intended and actually took steps to affirmatively aid Mr. Beasley in his delivery of heroin to the CI.

The jury received extensive instructions on the credibility of witnesses, both before and after hearing the evidence.[68] The jury was free to draw their own conclusions about the credibility of each witness, and what weight such evidence deserved. They were instructed at length orally and received written jury instructions on accomplice liability and the substantive offense of unlawful delivery of heroin.[69] Defendant heard the oral instructions, reviewed the written instructions, and was present for the second set of clarifying instructions given to the jury on the substantive offenses and accomplice liability after they began their deliberations. This Court notes that no objection was made thereto at any time by the Defendant.[70] The jury, therefore, had all the necessary information to decide whether to believe or disbelieve any or all of either party's evidence. The jury also was instructed that the Commonwealth could prove their case by

---

Here there are sufficient pieces of circumstantial evidence to show that Defendant had the *mens rea* to be an accomplice.

[67] See Def.'s Memorandum in Support of Post Sentence Motions, 2-5 (May 4, 2018); N.T. Vol. II at 124-25.

[68] See Transcript of Proceedings, In Re: Jury Trial, December 11, 2017, at 42-43 (Peck, J.)(hereinafter "N.T. at ___"); Transcript of Proceedings, In Re: Jury Trial, December 13, 2017, at 42-44 (Peck, J.)(hereinafter "N.T. Vol. III at ___").

[69] See N.T. at 38-41; N.T. Vol. III at 48-50, 53-57, 93-95, 98-105; see also Court's Exhibit No. 1, Written Jury Instructions, December 13, 2017.

[70] See N.T. Vol. III at 89, 92, 95, 105.

*A* – 11

circumstantial evidence, and were aware that this case rested largely on the presence of and interpretation they would give to circumstantial evidence.[71]

Defendant argues here that the evidence that Mr. Beasley used the phone found in the center console to make a drug sale, and that Defendant was momentarily in possession of that same phone prior to his arrest, does not show his intent to participate in the drug sale. The Commonwealth presented evidence to the contrary. Detective Collare, an experienced police officer and member of the Drug Task Force, testified that in the context of drug trafficking, multiple phones, specifically "burner" phones, are a staple in the industry and are often used for anonymous illicit drug transactions. In this case, there were four phones present in Defendant's car at the scene of the controlled buy, two being "burner" phones within the Defendant's reach and realm of control, and one being the specific phone used earlier that day to set up the drug sale. The phone used in the sale was present in Defendant's car, and was actually in his hand, prior to his arrest.

Defendant also contends that his mere presence at the scene, and the fact that he had given Mr. Beasley a ride to the location, does not prove that he had the intent to aid Mr. Beasley in the delivery of the drugs. Defendant was driving the car with Mr. Beasley as passenger immediately after the heroin sale.[72] Detective Collare testified that there was no luggage, personal hygiene kits, or workman's tools suggestive of an intent to travel found in the Defendant's car, despite the Defendant's proffered explanation that he was simply giving the codefendant a ride to the Greyhound station, and stopped at the Harvon on the way there.[73] Officer Kurtz also testified that he had seen Mr. Beasley driving the Defendant's vehicle the previous day. These facts could reasonably lead to the inference that Mr. Beasley was working as a "team" with Defendant being the getaway driver, and

---

[71] N.T. at 52; N.T. Vol. III at 24, 40-42.

[72] Photographs taken by investigating officers at the scene depict Defendant driving the car before and after the drug sale was consummated and Mr. Beasley returning to the car and getting into the passenger side. See N.T. Vol. II at 29-33; Commonwealth's Exhibits No. 8-9, Surveillance Photographs, December 12, 2017. Detective Collare also testified that he saw Mr. Beasley walk out of the hotel after the drug sale and get into the Defendant's car. N.T. Vol. II at 28-29, 31.

[73] N.T. Vol. II at 37, 98.

A-12

that Defendant knew and intended to transport Mr. Beasley to the motel to make the drug sale.

Defendant also complains that evidence that he had a large amount of cash, as well as methamphetamine pills, on his person at the time of his arrest is irrelevant to showing his intent to deliver heroin or aid Mr. Beasley in doing so. The Commonwealth presented evidence through the testimony of Detective Collare that the presence of a large amount of cash on a person in denominations of $20 is a "red flag" for drug trafficking, since illegal transactions are made in cash and specifically, heroin is usually purchased with $20 bills.[74] Furthermore, there was evidence that the Defendant had no reason to carry that much cash on his person as his employment was listed as "laborer" on a document discovered in his car dated the previous day, with no employer information listed.[75] There also were two methamphetamine pills found in Defendant's pocket. Mr. Beasley, at the time of his arrest, had a comparable amount of cash on his person. The jury could have inferred from this evidence that the codefendants were working as a team in dealing various kinds of drugs.

Lastly, Defendant claims evidence that he is from Philadelphia has no connection with any intent on his part to aid Mr. Beasley in delivering heroin. Detective Collare testified that in his experience, over 80% of the heroin found in Carlisle originated in Philadelphia, and also that "teams" of drug traffickers regularly bring the drugs from Philadelphia for sale in Carlisle. Evidence was presented that Defendant lives in Philadelphia, but regularly and consistently travels to Carlisle, shown by dated receipts and other documents found during a search of Defendant's vehicle.[76] Mr. Beasley is also from Philadelphia, and there was evidence to show that the codefendants are closely associated (e.g. Mr. Beasley was seen the previous day driving the Defendant's car), and at least in the instant case, had travelled to Carlisle on the same weekend.

---

[74] Id. at 59.

[75] N.T. at 50-51; Commonwealth's Exhibit No. 19, Photographs of Search of Defendant's Vehicle, December 12, 2017.

[76] N.T. Vol. II at 49-51, 53; Commonwealth's Exhibits No. 11, 18, 19, December 12, 2017.

A - 13

From the above testimony, it was reasonable for the jury to make several inferences supporting the Defendant's guilt in being an accomplice to Mr. Beasley in the unlawful delivery of heroin. The evidence supports an inference that Defendant and Mr. Beasley were partners, or at least close acquaintances, working as accomplices in an illegal drug operation.

Additionally, Mr. Beasley, the co-Defendant, said on the record during his guilty plea that he conspired with Defendant to deliver heroin. The jury could have accepted that as evidence that Defendant knew that the drug transaction was taking place and planned to, and actually did, transport Mr. Beasley to and away from the scene of the drug delivery in order to further the crime. The jury was free to disregard Mr. Beasley's later attempt to exculpate this Defendant after Mr. Beasley already got the benefit of a plea deal. The jury also was free to use this evidence to find Defendant guilty of being an accomplice even if they did not find an express agreement for purposes of Conspiracy.

Thus, when viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, as is required on appeal, it is clear that the Commonwealth met its burden of establishing that the Defendant intended to aid or promote the delivery of heroin and that he actively participated in the crime by aiding and/or agreeing to aid Mr. Beasley in doing so. In addition, the elements of the underlying crime were established beyond a reasonable doubt, as the jury heard the testimony of Mr. Beasley, who admitted that he committed the underlying heroin delivery, together with the Commonwealth's law enforcement witnesses, who were at the scene of the crime and made the arrests. After a review of the record, there was no error in denying Defendant's motion for acquittal at trial, as the Commonwealth proffered sufficient circumstantial evidence to prove beyond a reasonable doubt to the jury that Defendant was guilty of unlawful delivery of heroin as an accomplice.

b. Weight of the Evidence

Defendant also contends that the verdict of guilty was against the weight of the evidence. This Court disagrees. When reviewing weight of the evidence claims, the standard of review is as follows:

A - 14

> [a] challenge to the weight of the evidence is directed to the discretion of the trial judge, who heard the same evidence and who possesses only narrow authority to upset a jury verdict. The trial judge may not grant relief based merely on some conflict in testimony or because the judge would reach a different conclusion on the same facts. Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

Commonwealth v. Sanchez, 36 A.3d 24, 39 (Pa. 2011)(internal citations omitted). "Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." Commonwealth v. Cruz, 919 A.2d 279, 281-82 (Pa. Super. 2007) (internal citations omitted).

In the present case, the jury's verdict of guilty on the count of unlawful delivery of heroin under the theory of accomplice liability was not contrary to the evidence nor did it shock this Court's sense of justice. As discussed extensively *supra*, the jury's verdict of guilty was supported by the testimony and the physical evidence offered by the Commonwealth at trial.

This Court ruled against the Appellant's weight of the evidence claim when we denied his Post-Sentence Motions. The conviction hinged on the credibility of the witnesses and the weight of the circumstantial evidence as to whether Defendant knew that Mr. Beasley was going to be delivering heroin to the confidential informant at the Harvon motel in Carlisle on March 3, 2017, and whether Defendant drove Mr. Beasley to the motel on that day with the intent to further the delivery. The jury, as the finder of fact, is the sole judge of the credibility of witnesses at trial. Commonwealth v. Gooding, 818 A.2d 546, 552 (Pa. Super. 2003). In finding the Defendant guilty, the jury found the Commonwealth's witnesses and theory of the case to be more credible than the Defendant's. This Court is not in a position to substitute its judgment on the credibility or

weight of the evidence for that of the jury unless the jury's decision shocks the Court's sense of justice. In the present case, based on the evidence presented at trial, the jury's verdict did not shock the Court's sense of justice. Thus, Defendant's conviction should be upheld on appeal.

To the extent that Defendant challenges his conviction for Possession of Methamphetamine at Count 3, that conviction also was not against the weight of the evidence. Officer John Hanner testified that upon Defendant's arrest, two pills were discovered in his pants pocket.[77] The parties agreed that the pills contained methamphetamine.[78] Defendant elicited evidence on cross-examination of the officer that no photographs were taken of the pills before they were put into evidence, and that the pills taken from Defendant were sent to the lab on a different day than the heroin that was recovered from the codefendant.[79] However, although raising the spectre of alleged improper documentation of the drugs, Defendant did not challenge the authenticity of the drugs themselves and did not present any evidence that the police officers fabricated or otherwise misrepresented the evidence found on the Defendant's person at the time of his arrest. Based on all the evidence with regard to Defendant's possession of methamphetamine, the jury's verdict of guilty was warranted by the weight of the evidence and did not shock our sense of justice.

## CONCLUSION

Based on the foregoing reasons, this Court found that sufficient evidence was presented at trial to establish, beyond a reasonable doubt, each of the elements of Unlawful Delivery of a Schedule I Substance – Heroin based on Accomplice Liability, and that the verdicts on each charge for which Defendant was convicted were not against

---

[77] N.T. Vol. II at 84-86.
[78] Id. at 26.
[79] Id. at 87-88.

the weight of the evidence. Appellant's errors are without merit, and respectfully, his convictions should be upheld on appeal.

BY THE COURT,

Christylee L. Peck,　J.

Office of the District Attorney
Christopher R. Sherwood, Esq.
Assistant Public Defender

A-17